# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# NORTHERN DIVISION

| | | |
|---|---|---|
| TALYNN JESSE WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:22CV94 JAR |
| | ) | |
| MARTIN J. O'MALLEY,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Talynn Jesse Williams's application for supplemental security income ("SSI") under Title XVI, 42 U.S.C. §§ 1381, *et seq*. For the reasons discussed below, the decision of the Commissioner will be affirmed.

### Background

On June 29, 2020, Plaintiff protectively filed an application for SSI with an alleged onset date of March 1, 2017. Plaintiff claimed disability due to bipolar disorder, depression, anxiety, post-traumatic stress disorder, panic attacks, thyroid disease, and psoriasis. After Plaintiff's application was initially denied on May 3, 2021, and denied again after reconsideration on September 22, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on March 10, 2022. Plaintiff was represented by counsel at the hearing, and the ALJ heard evidence from both Plaintiff and a vocational expert ("VE"). After

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted, therefore, for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

considering the testimony and record evidence, the ALJ issued an unfavorable decision on May 25, 2022. The Appeals Council denied Plaintiff's request for review of this decision. Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See Sims v. Apfel*, 560 U.S. 103, 107 (2000).

## Facts

The Court adopts Plaintiff's Statement of Material Facts [ECF No. 8-1] and Defendant's Response [ECF No. 9-1], which Plaintiff noted no opposition to [ECF No. 10-1]. These statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts from the record, including Plaintiff's testimony and medical records, will be discussed as necessary to address the parties' arguments.

## Legal Standard

To be eligible for benefits under the Social Security Act, Plaintiff must prove that she is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* at § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). At Step One, the Commissioner considers the

claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At Step Two, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also,* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also,* 20 C.F.R. §§ 416.920(c), 416.920a(d). At Step Three, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d). At Step Four, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also,* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment— and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th

Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to her RFC, and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv); *see also, Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of process).

The claimant bears the burden through Step Four of the analysis. If she meets this burden and shows that she is unable to perform her past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with her impairments and vocational factors such as age, education, and work experience. *See Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's

4

decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016); *see also, Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

### Decision of the ALJ

In her decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity following the alleged onset date. The ALJ found that Plaintiff had the severe impairments of degenerative disk disease of the lumbar spine, degenerative disk disease of the cervical spine, asthma, obesity, bipolar II disorder, social anxiety disorder, generalized anxiety disorder, and borderline personality traits, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. After consideration of the entire record, the ALJ assessed Plaintiff's RFC as permitting the performance of light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> [S]he cannot climb ropes, ladders or scaffolds; the claimant can occasionally climb ramps and/or stairs, stoop, kneel, crouch and/or crawl; she should avoid concentrated exposure to temperature extremes, wetness/humidity and pulmonary irritants, such as gas, fumes, odors, dust and workspace with poor ventilation; the claimant should avoid concentrated exposure to vibration and work hazards, such as unprotected heights and being around dangerous moving machinery; she is able to understand, remember and carry out simple instructions with repetitive tasks consistent with unskilled work; the claimant can perform simple decision-making related to basic work functions; she can tolerate minor, infrequent changes within the workplace; the claimant can tolerate occasional interaction with co-workers and supervisors; she cannot perform tandem tasks, and cannot work in close proximity to coworkers (for example, no shoulder to shoulder type work environment) and work is done relatively independently; the claimant should avoid interaction with the

5

general public; and she should avoid work involving intense or extensive interpersonal interaction and handling complaints or dissatisfied customers.

The ALJ concluded that Plaintiff has no past relevant work. The ALJ then determined, considering Plaintiff's age, education, work experience, and RFC, and based on the VE testimony, that Plaintiff could perform other jobs that exist in significant numbers in the national economy, such as a routing clerk, a collator operator, and a production assembler. In making this determination, the ALJ acknowledged that Plaintiff was born on September 21, 2001, and was 18 years old on the date the application was filed, which is defined as a "younger individual" (age 18-49). 20 C.F.R. § 416.963. The ALJ further noted Plaintiff had at least a high school education. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, since June 29, 2020, the date the application was filed. 20 CFR § 416.920(g).

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are: (i) whether substantial evidence supports the RFC based on the ALJ failing to address the impact of Plaintiff's weekly treatment; and (ii) whether the ALJ properly considered Plaintiff's subjective complaints regarding her mental impairments.

## Discussion

The RFC and Plaintiff's Weekly Treatment

A claimant's RFC is "the most a claimant can still do despite his or her physical or mental limitations." *Martise*, 641 F.3d at 923 (internal quotations, alteration and citations omitted); 20 C.F.R. § 404.1545(a)(1). It is the claimant's burden rather than the Commissioner's to provide claimant's RFC. *Pearsall,* 274 F.3d at 1217. In formulating a claimant's RFC, the ALJ must

6

consider all the relevant, credible record evidence, including a claimant's medical records, observations from treating and examining physicians, and a claimant's subjective statements. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

Plaintiff argues that remand is required because the ALJ did not consider the impact of her weekly in-office treatments to assess her ability to attend work regularly in the RFC. The record reflects that Plaintiff suffers from the impairments of bipolar II disorder, social anxiety disorder, generalized anxiety disorder, and borderline personality traits and appears to an urgent care on a weekly basis to receive Spravato[2] treatments to help alleviate the effects of these impairments. Plaintiff testified, and the record confirms, each visit is approximately two hours, and she self-administers Spravato one to two times per week. The record also reflects that Plaintiff typically goes to receive her Spravato treatments at Complete Family Medicine Urgent Care located in Kirksville, Missouri, usually near the end of a traditional workday, at approximately 4:00 P.M. or after. *See, e.g.,* Tr. 1340, 1344, 1348, 1351, 1355, 1360, 1367, 1371, 1376, 1380, 1385, 1389, 1394, 1403, 1412, 1421. The Court notes that according to Complete Family Medicine's website,[3] the urgent care that she visits is open every day, Monday through Sunday from 8 A.M.-8 P.M. There is no evidence on the record that Plaintiff is unable to obtain her Spravato treatments outside of regular work hours. In fact, many courts in the Eighth Circuit have "rejected similar arguments that medical treatment would result in unreasonable absenteeism and tardiness." *David L. v. Kijakazi,* 2022 WL 1316363, at *13 (E.D. Mo. May 3, 2022) (citing *Greenwade v. Saul*, 2020 WL 1318793, at *6 (N.D. Iowa Mar. 20, 2022) (collecting cases)). This is because "medical

---

[2] The Court takes judicial notice that upon approving this medication, the Food and Drug Administration stated that "patients must be monitored by a health care provider for at least two hours after receiving their Spravato dose." *See* FDA News Release (Mar. 5, 2019) at https://www.fda.gov/news-events/press-announcements/fda-approves-new-nasal-spray-medication-treatment-resistant-depression-available-only-certified (last visited March 28, 2024).

[3] https://www.cfmcares.com/ (last visited March 28, 2024).

7

appointments do not necessarily have to be scheduled during work hours or require the claimant to miss an entire day of work." *Greenwade*, 2020 WL 1318793, at *6 (collecting cases); *see also, Brock v. Astrue*, 2008 WL 4104551, at *16 (W.D. Mo. Aug. 28, 2008) ("[T]he fact that a claimant must attend regular healthcare appointments does not necessarily indicate that she cannot work; there is nothing in the record to indicate that [claimant] could not schedule her appointments around her work schedule."). Notably, the cases Plaintiff cited to in support of her argument refer to time commitments related to in-patient stays spanning from twelve hours to three days. *See, e.g., Painter v. Kijakazi,* 2021 WL 4439273, at *3-4 (E.D. Mo. Sept. 28. 2021) (finding the ALJ failed to consider inpatient treatment that lasts two to three days per month in RFC assessment); *Filmore v. Saul*, 2019 WL 4576300, at *8 (E.D. Mo. Sept. 20, 2019) (holding that in assessing RFC, the ALJ should have considered monthly immunoglobulin therapy that lasted 12 hours each time). These cases are distinguishable from Plaintiff's need to receive a two-hour nasal treatment approximately once or twice per week from a provider that is open outside traditional work hours during the week, and on weekends. As a result, the Court does not find that Plaintiff's time commitment for this treatment is so burdensome that the ALJ erred by not including it in a hypothetical to the VE as a limitation that should be considered in the RFC or in her decision. Hypothetical questions only need to include limitations found credible by the ALJ. *See Pertuis v. Apfel*, 152 F.3d 1006, 1007 (8th Cir. 1998).

<u>Subjective Complaints Regarding Mental Impairments</u>

Next, Plaintiff argues that the ALJ failed to provide support for discounting her subjective complaints regarding her mental impairments and relied on conclusory statements that are not supported by the record. As a preliminary matter, Social Security Ruling 16-3p[4] eliminated the

---

[4] The revised Ruling became effective on March 27, 2017. It applies to determinations or decisions made by the Social Security Administration on or after March 28, 2016.

8

word "credibility" from the analysis of subjective complaints, replacing it with "consistency" of a claimant's allegations with other evidence. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529. The Rule incorporates the familiar factors from *Polaski v. Heckler*. 739 F.2d 1320, 1322 (8th Cir. 1984). In *Polaski*, the Eighth Circuit held, in evaluating a claimant's subjective complaints and related functional limitations, the ALJ should consider: the absence of objective medical evidence; the claimant's prior work record; and observations by third parties (including treating and examining physicians) regarding such matters as (1) the claimant's daily activities; (2) the duration, frequency, and intensity of pain or other symptoms; (3) any precipitating and aggravating factor; (4) the dosage, effectiveness, and side effects of medication; and (5) the claimant's functional restrictions. *Id.* The Eighth Circuit recognized "[t]he ALJ is in the best position to gauge the credibility of testimony and is granted deference in that regard." *See Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Schwandt v. Berryhill,* 926 F.3d 1004, 1012 (8th Cir. 2019). Further, if the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ acknowledged that Plaintiff's mental impairments could reasonably be expected to cause issues, but found that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and the record as a whole. The ALJ discussed Plaintiff's complaints, the findings of her physical examinations, and treatment notes at length. Despite Plaintiff's contention, the ALJ did consider her subjective

9

complaints that she struggled to go out in public, had prior suicidal ideations, and displayed a depressed mood and anxiety, but found this evidence only supported some limitations, not to the extent that Plaintiff alleged. The ALJ provided valid and well-supported reasons for discounting Plaintiff's subjective complaints related to her mental impairments. For instance, the ALJ explained at her new patient evaluation on the application date, Plaintiff was cooperative, alert and fully oriented. The ALJ acknowledged that Plaintiff reported anxiety around others, poor motivation, hopelessness, poor energy, mood swings, and anger issues. The ALJ next outlined Plaintiff's February 2021 psychological consultative examination with Laura Brenner, Ph.D., where she was again observed to be cooperative, alert and fully oriented with good hygiene. Her insight, judgment, and memory were assessed as intact, and she made appropriate eye contact, with good social skills and average concentration. The ALJ acknowledged Plaintiff reporting symptoms including irritable mood, sleep disturbances, and low energy, and recognized that she had engaged in self-harm on two occasions prior to the relevant period. Dr. Brenner concluded that Plaintiff had no more than moderate limitations, opining that she has the intelligence to learn new work tasks quickly, concentrates well and can keep up a good work pace. At Plaintiff's physical consultation, she took a mental status examination, and scored thirty out of thirty points, reflecting full orientation, simple math skills, and good cognition.

The following month, the ALJ recognized that Plaintiff underwent five days of inpatient treatment because of suicidal ideation from being overwhelmed. When Plaintiff was released after she was stabilized, her mental status examination was within normal limits. At her follow-up appointment following her release, Plaintiff indicated that she was sleeping better, but was isolating as a result of her symptoms, which included mood swings, occasional crying spells, anger, and depression. The ALJ recognized that Plaintiff displayed a depressed mood, but noted

that her mental status examination was otherwise normal. Importantly, the ALJ next explained that following this event, Plaintiff reported that her symptoms were generally improving for the remainder of the relevant period, explaining that her mood was more stable. Further, Plaintiff's examination was within normal limits, and she began reporting that she was having positive results from her new antidepressant. The regulations allow the ALJ to consider Plaintiff's level of treatment and use of medication in evaluating her subjective complaints, which the ALJ appropriately did so here. *See* 20 C.F.R. § 404.1529(c)(3)(iv)-(v) (ALJ may consider medication and treatment); *Bernard v. Colvin*, 774 F.3d 482, 488 (8th Cir. 2014) (an impairment that is "controllable or amenable to treatment [but she still experienced anxiety does] not support a finding of total disability") (internal quotation omitted)).

As for daily living, the ALJ did take into consideration that Plaintiff struggled with going out in public but found that she had a wide range of activities, such as living alone, performing her household chores, preparing her own meals, going to the store without issue by January 2022, and caring for her pet cat with assistance from her mother. Although activities of daily living are not sufficient on their own to prove a plaintiff can work, they can appropriately support the ALJ's decision when considered in conjunction with the medical record. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

The ALJ also considered the findings offered by state agency psychological consultants, Barbara Markway, Ph.D., and Martin Isenberg, Ph.D., who both assessed Plaintiff with no more than moderate limitations, noting that she can perform most activities of daily living. The ALJ considered Dr. Isenberg's opinion to be more persuasive because it was based on a more fully developed version of Plaintiff's history, but overall found that these prior administrative medical findings concerning Plaintiff's mental health impairments have persuasive value. The Social

11

Security regulations explicitly provide that state agency consultants are "highly qualified ... experts in Social Security disability evaluations" and that ALJs "must consider" their findings as medical opinion evidence. 20 C.F.R. §§ 404.1513(c), 404.1527(e). *See also, Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (holding it was proper for the ALJ to rely on the opinion of the state agency consultant where it was consistent with other evidence).

While Plaintiff may suffer from depression, anxiety and have some difficulty interacting with others, the ALJ recognized multiple limitations and restrictions in the RFC for Plaintiff's mental impairments. These restrictions recognize that Plaintiff cannot perform tandem tasks and limits Plaintiff's social interactions such that she "should avoid interaction with the general public; and she should avoid work involving intense or extensive interpersonal interaction and handling complaints or dissatisfied customers." The RFC also emphasizes that Plaintiff "cannot work in close proximity to coworkers" and work should "be done relatively independently."

The Court finds that the ALJ's decision to discredit Plaintiff's subjective complaints regarding her mental impairments were consistent with the record as a whole, which the ALJ adequately explained with good reasons supported by substantial evidence. The ALJ carefully detailed her findings through her discussion of Plaintiff's mental impairments, taking into consideration these limitations in the RFC. In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson,* 361 F.3d at 1070 (citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997).

## Conclusion

As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Estes*, 275 F.3d at 724. So long as there is substantial evidence in the record that supports the

decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). For these reasons stated above, the Court finds the ALJ's decision that Plaintiff was not disabled is supported by substantial evidence on the record, and therefore, the Commissioner's decision will be affirmed. *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED**.

Dated this 28th day of March, 2024.

                                                    **JOHN A. ROSS**
                                                    **UNITED STATES DISTRICT JUDGE**